# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CATHERINE BAKER, | § | |
| | § | No. 393, 2022 |
| Plaintiff-Appellant, | § | |
| | § | Certification of Question of Law |
| | § | from the United States Court of |
| v. | § | Appeals for the Third Circuit |
| | § | Appeal Nos. 21-3360 & 22-1333 |
| CRODA INC., f/k/a Croda, Inc. | § | |
| | § | Court below: |
| Defendant-Appellee. | § | U.S. District Court, D. Del. |
| | § | Civil Action No. 1:20-cv-01108 |

Submitted: June 14, 2023
Decided:  August 24, 2023

Before **SEITZ**, Chief Justice; **VALIHURA**, **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices, constituting the Court *en Banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Third Circuit. **CERTIFIED QUESTION ANSWERED.**

CHRISTINE M. MACKINTOSH, Esquire (*argued*), and KELLY L. TUCKER, Esquire, GRANT & EISENHOFER P.A., Wilmington, Delaware, *for Appellant Catherine Baker*.

KENNETH J. NACHBAR, Esquire, and MIRANDA N. GILBERT, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, Delaware, and DAVID S. COOPER, Esquire (*argued*), QUINN EMANUEL URQUHART & SULLIVAN, LLP, New York, New York, and MICHELLE SCHMIT, Esquire, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Chicago, Illinois, *for Appellee Croda Inc.*

**GRIFFITHS**, Justice:

This Court has received a request from our colleagues on the United States Court of Appeals for the Third Circuit to answer the following question:

> Whether an increased risk of illness, without present manifestation of a physical harm, is a cognizable injury under Delaware law? Or put another way, does an increased risk of harm only constitute a cognizable injury once it manifests in a physical disease?

This question arises in connection with a toxic tort class action in the United States District Court for the District of Delaware that was appealed to the Third Circuit. Delaware resident Catherine Baker filed suit individually and on behalf of fellow residents who live near Atlas Point, a chemical plant that regularly uses and emits ethylene oxide, a dangerous chemical.

Our answer is that an increased risk of illness without present manifestation of a physical harm is not a cognizable injury under Delaware law. This opinion gives the reasons for our answer.

I.

The facts relevant to our decision are taken from the Third Circuit's certification request ("Certification Request").[1]  Croda Inc. ("Croda") owns and

---

[1] *See* Supr. Ct. R. 41(c)(iv); *E.I. DuPont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 458 (Del. 1999). We treat these facts as undisputed for the purposes of deciding these legal issues. *See Duncan v. Theratx, Inc.*, 775 A.2d 1019, 1021 (Del. 2001). We also provide some limited background from Baker's complaint, *see* Appendix to Opening Br. at A10-A37, and the District Court's November 23, 2021 opinion (the "District Court Opinion", *see* Opening Br. at Ex. B), purely for context for the reader. To the extent we refer to the complaint, we recognize that the allegations therein are disputed.

operates Atlas Point, a chemical plant in New Castle, Delaware.[2] One of the chemicals used at the plant—ethylene oxide—is a known carcinogen.[3] Croda uses ethylene oxide in the production of surfactant and the creation of ethylene glycol.[4] The plant regularly releases ethylene oxide gas into the air, which lingers at breathing level in the communities surrounding Atlas Point.[5] To make matters worse, the plant experienced a significant leak in 2018 from which thousands of pounds of the dangerous chemical escaped into the environment. Catherine Baker ("Baker") and putative class members live within a class zone defined by specific census tracts surrounding the chemical plant.[6] The Environmental Protection Agency estimates that, because of their exposure to the chemical, Baker and the putative class members are up to four times more likely to develop cancer than the average American.[7]

On August 24, 2020, Baker filed a class action lawsuit against Croda in the District of Delaware, alleging that Croda's use and emission of ethylene oxide is an ultrahazardous activity and that it was strictly liable for "any injuries proximately resulting therefrom."[8] Baker's complaint also alleged that Croda was liable for

---

[2] Opening Br., Ex. C (Certification Request) at 3; Complaint ¶ 1.
[3] *Id.*; Complaint ¶¶ 2, 6.
[4] Certification Request at 3-4.
[5] *Id.* at 4.
[6] *Id.*
[7] *Id.*
[8] Complaint ¶¶ 73-80.

3

public and private nuisance, negligence, and willful and wanton conduct.[9] According to the complaint,

> [a]s a direct and proximate result of [Croda's tortious conduct] and the exposure to EtO resulting therefrom, Plaintiff and the Class Members presently suffer, and will continue to suffer, a present increased risk of illness, disease or disease process, and the resulting present need to incur the cost of reasonably medically necessary diagnostic testing for the early detection of illness, disease or disease process. Plaintiff and Class Members therefore seek as damages the cost of a medical monitoring program for such detection.[10]

Croda moved to dismiss the complaint, and the District Court granted the motion on November 23, 2021,[11] holding that "fearing an increased risk of disease" is not a "legal injury" in Delaware.[12] It found that the class "cannot recover damages for the risks of diseases that they do not yet have. And because each tort requires an injury, none of Baker's torts survive this flaw."[13] The District Court permitted Baker to amend the complaint to show that the class suffered physical injury.[14] Baker did not do so, and subsequently appealed to the Third Circuit.

On October 21, 2022, the Third Circuit petitioned this Court to answer the above question. In its petition, the court surveyed caselaw from this Court rejecting claims based on fear of disease absent physical injury, but concluded that "[a]

---

[9] *Id.* at ¶¶ 81-123.
[10] *Id.* at ¶ 102.
[11] Opening Br. at Ex. B.
[12] District Court Opinion at 2.
[13] *Id.* at 6.
[14] *Id.*

substantive difference exists between an injury based on a fear of disease and an injury based on an increased risk of disease."[15] Acknowledging the far-reaching implications of a decision to recognize an increased risk of disease as a cognizable injury—which it considered "an unsettled issue . . . under Delaware law"[16]—the Third Circuit turned to us for clarification.

II.

Certified questions of law are reviewed *de novo*.[17]

III.

We answer the certified question as follows: an increased risk of illness without physical harm is not a cognizable injury under Delaware law. Stated differently, an increased risk of harm only constitutes a cognizable injury once it manifests in a physical disease. It is axiomatic that all tort claims require an injury.[18] Under Delaware law, an "injury in fact" is defined as "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."[19] An increased risk of illness, without more, is not

---

[15] Certification Request at 6.
[16] *Id.* at 3.
[17] *PHL Variable Insurance Co. v. Price Dawe 2006 Insurance Trust*, 28 A.3d 1059, 1076 (Del. 2011).
[18] Restatement (Second) of Torts § 7 (1965).
[19] *Dover Hist. Soc. v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003) (quoting *Society Hill Towers Owners' Ass'n v. Rendell*, 210 F.3rd 168, 175-76 (3d Cir. 2000)).

"actual or imminent," and thus does not constitute an injury. Below, we review the established precedent and public policy concerns underpinning our answer.

A.

In *Metro-North Commuter Railroad Company v. Buckley*,[20] a case involving a railroad worker who was exposed to asbestos but had not been afflicted by disease, the United States Supreme Court rejected a claim for medical monitoring under a federal statute. The court assumed, and the parties did not dispute, that "an exposed plaintiff can recover related reasonable medical monitoring damages *if and when he develops symptoms*."[21] The court then examined state law cases to determine whether negligent exposure to a toxic substance that would cause exposed persons to incur medical costs was, in itself, a sufficient basis for tort recovery under federal law.[22] It observed that the states authorizing recovery for medical monitoring in the absence of physical injury "do not endorse a full-blown, traditional tort law cause of action for lump-sum damages" but rather "have suggested, or imposed, special limitations on that remedy."[23] It also highlighted the serious public policy concerns that could follow if it adopted "a traditional, full-blown ordinary tort liability rule," observing that "tens of millions of individuals *may* have suffered exposure to

---

[20] *Metro-N. Commuter R. Co. v. Buckley*, 521 U.S. 424 (1997).
[21] *Id.* at 439 (emphasis added).
[22] *Id.* at 440.
[23] *Id.* at 440-41.

substances that might justify some form of substance-exposure-related medical monitoring."[24] This fact, "along with uncertainty as to the amount of liability, could threaten both a 'flood' of less important cases . . . and the systemic harms that can accompany 'unlimited and unpredictable liability.'"[25]

Turning to Delaware caselaw, we first review *Mergenthaler v. Asbestos Corporation of America*,[26] a case involving claims by present or former asbestos workers and their spouses. There, the court addressed "[w]hether a claim for the expenses of medically required surveillance and related mental anguish of the plaintiffs' wives fails to state a claim upon which relief can be granted where there is no present physical injury."[27] The court held that present physical disease was required to state a claim under Delaware law.[28] The court found that an essential element of a mental anguish claim is physical injury and because "plaintiffs-spouses concede that they have suffered no physical injury due to wrongful asbestos exposure," such "concession is dispositive."[29]

Similarly, in *Brzoska v. Olson*,[30] the court found that "damages for claims of emotional distress or mental anguish . . . are recoverable only if [an] underlying

---

[24] *Id.* at 442 (emphasis added).
[25] *Id.*
[26] 480 A.2d 647 (Del. 1984).
[27] *Id.* at 649.
[28] *Id.* at 651.
[29] *Id.*
[30] 668 A.2d 1355 (Del. 1995).

injury is shown."[31] There, former patients of a dentist who had AIDS brought claims for mental anguish and the cost of medical testing or monitoring, even though the patients had not contracted the disease.

Baker reads these cases as adopting an "actual exposure" test permitting plaintiffs to recover for claims based on fear of disease when accompanied by "actual exposure" to a disease-causing agent.[32] But, in conceiving this test, Baker relies on the *Brzoska* court's analysis of the plaintiffs' battery action, which, as an intentional tort, did not require physical injury in the presence of "conduct [] viewed as outrageous."[33] As to the plaintiffs' negligence action, the court applied *Mergenthaler* and concurred with the Superior Court's finding that the plaintiffs could not recover in the absence of a physical injury:

> Here, plaintiffs have alleged no injuries which stem from their exposure to HIV. Instead, plaintiff's alleged "injuries" arise solely out of their *fear* that they have been exposed to HIV. In essence, they claim mental anguish damages for their "fear of AIDS." As noted in *Mergenthaler,* however, damages for claims of emotional distress or mental anguish (which would include fear of contracting a disease) are recoverable only if the underlying physical injury is shown. In this case, plaintiffs have sustained no physical injury, and, therefore, they could not recover under a negligence theory.[34]

---

[31] *Id.* at 1362.
[32] *See* Opening Br. at 18, 20.
[33] *Brzoska*, 668 A.2d at 1362.
[34] *Id.*

8

In *United States v. Anderson*,[35] the District of Delaware certified questions to our court, asking whether a testicular cancer patient could recover, as an element of damages, for an increased risk of cancer recurrence related to his doctors' failure to diagnose his condition where evidence showed that he probably would not suffer future cancer. Though the court declined to answer whether an increased risk of cancer constitutes an independent cause of action,[36] it observed in *dicta* that the "requirement of a preceding physical injury prohibits plaintiffs from claiming that exposure to toxic substances, for instance, has created an increased risk of harm not yet manifested in a physical disease."[37]

Our holding that an increased risk of illness, without more, cannot be a cognizable injury under Delaware law comports with the established principle espoused in *Mergenthaler*, *Brzoska*, and *Anderson* that claims in tort require an actual or imminent injury. To hold otherwise would constitute a significant shift in our tort jurisprudence. Further, the District Court's observation that "Delaware tort law presupposes that plaintiffs will bring suits after they suffer physical symptoms, not before" is apt.[38] As it stands, the statute of limitations for toxic tort claims starts to run when a plaintiff begins to experience *physical effects*.[39] In addition, toxic tort

---

[35] 669 A.2d 73 (Del. 1995).
[36] *Id.* at 79.
[37] *Id.* at 77.
[38] District Court Opinion at 5.
[39] *Brown v. E.I. duPont de Nemours & Co., Inc.*, 820 A.2d 362, 368 (Del. 2003); *see also In re Asbestos Litig.*, 2017 WL 3600418, at *1 (Del. Super. Aug. 18, 2017).

plaintiffs are permitted to bring separate claims for separate *diseases* caused by one exposure.[40] Accordingly, a future risk of illness without any present injury does not constitute an injury-in-fact in tort under Delaware law.

B.

We also briefly turn to public policy concerns surrounding this issue, which likewise inform our answer to the Third Circuit's question. Indeed, as the Third Circuit noted, "the decision to recognize an increased risk of disease as a cognizable injury is significant, and its implications are far reaching."[41]

Justice Breyer observed in *Metro-North* that "contacts, even extensive contacts, with serious carcinogens are common."[42] Indeed, "tens of millions of individuals may have suffered exposure to substances" that may never result in any harm.[43] Sadly, our reality 26 years later remains much the same, and courts have rightfully expressed concern that recognizing an increased risk of illness, without more, as a cognizable injury could open the floodgates to "endless and limitless"

---

[40] *See Sheppard v. A.C. & S. Co.*, 498 A.2d 1126, 1134 (Del. Super. 1985), *aff'd sub. nom. Keene Corp. v. Sheppard*, 503 A.2d 192 (Del. 1986).
[41] Certification Order at 6.
[42] *Metro-North*, 521 U.S. at 434.
[43] *Id.* at 442.

litigation.[44] Dispensing with the physical injury requirement could also diminish resources that are presently used for those who have suffered physical injury.[45]

It is true, of course, that there are competing public policy concerns on this topic. As other courts have observed, medical surveillance damages promote early diagnosis and treatment of disease, and they can help to ameliorate the injustice of having economically disadvantaged persons pay for diagnostic testing.[46] But, like the United States Supreme Court in *Metro-North*, "[w]e have not tried to balance these, or other, competing considerations here."[47] Rather, we highlight them to "explain why we consider the . . . cautions [in other decisions] to be important."[48] In the future, if Delaware's General Assembly decides to recognize medical monitoring as a separate cause of action, it is much better suited to address the complicated issues that would arise such as when the limitations period would begin to run, whether a higher pleading standard might be required, what type of test

---

[44] *Rainer v. Union Carbide Corp.*, 402 F.3d 608, 621 (6th Cir. 2005) (internal quotations omitted); *see also Caronia v. Philip Morris USA, Inc.*, 22 N.Y.3d 439, 451 (2013) ("dispensing with the physical injury requirement could permit tens of millions of potential plaintiffs to recover monitoring costs, effectively flooding the courts while concomitantly depleting the purported tortfeasor's resources for those who have actually sustained damage); *Henry v. Dow Chem. Co.* 701 N.W.2d 684, 694 (Mich. 2005) ("recognizing a cause of action based solely on exposure-one without a requirement of a present injury-would create a potentially limitless pool of plaintiffs").
[45] *See Caronia,* 22 N.Y.3d at 451.
[46] *See Redland Soccer Club, Inc. v. Dep't of the Army & Dep't of Def. of the U.S.*, 696 A.2d 137, 145 (1997).
[47] *Metro-North*, 521 U.S. at 434.
[48] *Id.*

should be utilized to determine whether someone qualifies for medical monitoring,[49] or whether medical monitoring costs would be provided by a court-supervised fund,[50] among others. But that is not within our purview today.

For all the above reasons, we find that an increased risk of harm only constitutes a cognizable injury when manifested by physical illness.

IV.

Having answered the certified question, we direct the Clerk to transmit this opinion to the Third Circuit.

---

[49] The states that do allow medical monitoring for those with increased risk of disease without a present illness do not use utilize a standard framework to determine who is eligible for monitoring. Rather, numerous tests exist among state courts. *See, e.g.*, *Exxon Mobil Corp. v. Albright*, 71 A.3d 30, 80-81 (Md. App. 2013) (describing four-part test); *Donovan v. Philip Morris USA, Inc.*, 455 Mass. 215, 226 (2009) (describing seven-part test, including requirement of "subcellular" injury); *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1006 (1993) (describing five-part test).

[50] *See Metro-North*, 521 U.S. at 441 (citing cases); *see also, e.g.*, *Exxon*, 71 A.3d at 80-81 (same).